**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **C.R.,** ***a minor by her parents and legal guardians*****, COLIN ROSE AND CHARMAINE CAMPBELL** | : | **CIVIL ACTION** |
| **v.** | : | **NO. 24-6231** |
| **WAL-MART #2252,** ***et al.*** | : | |

**MEMORANDUM OPINION**

**Henry, J.** **September 29, 2026**

Pending before the Court is Defendants Wal-Mart #2252 and Walmart, Inc.'s Motion for Summary Judgment. This case arises out of Plaintiff C.R.'s injury after she slipped and fell while visiting Wal-Mart #2252 with her family. In her Complaint, which Defendants removed to this Court on the basis of diversity on November 21, 2024, Plaintiff asserts that Defendants were negligent in maintaining the safety of the premises of the store, among other alleged failures. Defendants moved for summary judgment on December 15, 2025 (ECF No. 24). Plaintiff filed her opposition on January 14, 2026 (ECF No. 27). Defendants filed a reply brief on January 28, 2026 (ECF No. 28), and oral argument was held on September 22, 2026. For the following reasons, I will grant Defendants' Motion.

## I. BACKGROUND

This case arises out of Plaintiff's fall in the cereal aisle of a Walmart store. Plaintiff, a minor, was shopping inside the Walmart Supercenter located in Easton, Pennsylvania on March 5, 2022 with her parents, Colin Rose and Charmaine Campbell, and her sister. *See* ECF No. 24 ("Def. SOF") ¶¶ 1-2. After about an hour in the store, the family entered the cereal aisle of the grocery

section. *Id.* ¶ 3. C.R.'s mother, Campbell, was the first person to walk down the aisle, "in the lead." *Id.* ¶ 4. She had walked past C.R. and was about halfway down the aisle. *Id.* C.R. estimated that her family was a few feet ahead of her. *Id.* ¶ 11. There was nobody else in the aisle. *Id.* ¶ 5.

Plaintiff was looking for something on the shelf when she realized that her family was moving, so she tried to catch up. *Id.* ¶ 12. She moved at a pace either in between a walk and a light jog or just shy of a jog to try to catch up with her family when her left foot slipped inwards toward her right foot. *Id.* ¶ 13; ECF No. 27 ("Pl. Opp. to Def. SOF") ¶ 13. She tried to reach out to hold on to something, but there was nothing for her to grab, and she fell onto her left leg and hip. Def. SOF ¶ 13.

Rose was a few feet ahead of Plaintiff when she fell. *Id.* ¶ 14. He heard a bang and looked to see Plaintiff lying on the floor; he did not see her fall. *Id.* Rose went to pick up Plaintiff off of the floor. *Id.* ¶ 15. When Rose picked up Plaintiff, Campbell saw a piece of plastic about four inches in size on the ground next to C.R.'s foot. *Id.* ¶ 16. She took pictures of the piece of plastic with her cell phone. *Id.* Campbell thought the piece of plastic may have been under Plaintiff's foot. *Id.* ¶ 17. Rose also noticed the plastic after he picked up Plaintiff. *Id.* ¶ 18. Rose and Campbell both testified that they were not looking at or paying attention to the floor before Plaintiff fell. *Id.* ¶¶ 6, 9; Pl. Opp. to Def. SOF ¶¶ 6, 9.

Plaintiff testified that the piece of plastic was clear and that she "assum[ed] it was clean," and that she did not see anything on the ground prior to her fall. Def. SOF ¶¶ 21-22. She described the plastic as "almost like Saran Wrap" and "probably about six inches long." *Id.* ¶ 24; Pl. Opp. to Def. SOF ¶ 24. In her answers to Defendants' interrogatories, Plaintiff stated that "[t]he shape and consistency of the plastic appears that it was packaging plastic of the type that wraps boxes of merchandise before it is unloaded onto the shelves." Def. SOF ¶ 31. Campbell and Rose both

testified that they did not know how long the plastic was on the ground before Plaintiff fell or where the plastic came from. *Id.* ¶¶ 26-27, 29.

After Plaintiff's fall, another customer went to get a Walmart employee, who came to the scene to assist about 10 to 15 minutes later. *Id.* ¶¶ 34-35. The employee picked up the piece of plastic. *Id.* ¶ 36. There is no video of Plaintiff's fall because there is no video camera in the cereal aisle. *Id.* ¶ 48.

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court draws all inferences in favor of the non-moving party. *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004).

## III. ANALYSIS

Under Pennsylvania law, to prevail on a negligence claim, a plaintiff must establish:

> (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between

> the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another.

*Pace v. Wal-Mart Stores E., LP*, 337 F. Supp. 3d 513, 519 (E.D. Pa. 2018), *aff'd*, 799 F. App'x 127 (3d Cir. 2020) (*quoting Felix v. GMS, Zallie Holdings, Inc.*, 501 F. App'x 131, 134 (3d Cir. 2012)).

Visitors to a store are considered "business invitees," to whom a possessor of land such as a store owner is liable

> if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

*Id.* (quoting *Henderson v. J.C. Penney, Corp.*, No. 08-cv-177, 2009 WL 426180, at *3 (E.D. Pa. Feb. 20, 2009)). The "invitee must prove either the proprietor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition." *Id.* (quoting *Hower v. Wal-Mart Stores, Inc.*, No. 08-cv-1736, 2009 WL 1688474, at *3 (E.D. Pa. June 16, 2009)).

As clarified at oral argument, Plaintiff's sole argument for Walmart's liability for her injuries is that Walmart had a hand in creating the harmful condition—that is, Defendants caused the presence of plastic on the floor. Defendants, in contrast, argue that there are no material undisputed facts as to the origin and nature of the plastic on the floor and Plaintiff's fall, so a jury would have to unduly speculate as to where the plastic originated and what caused Plaintiff's fall.

Defendants point to testimony of Plaintiff and her parents that they do not know what caused Plaintiff to fall, but that they found a small piece of plastic after her fall near the area where she fell, and that Plaintiff testified that "she may have also just slipped on 'dust.'" *See* ECF No. 24-2 ("Mot.") at 11. Defendants contend that although Plaintiff's parents testified that they believe

she slipped on the piece of plastic, it is "[e]qually probable . . . that C.R. tripped while she was moving 'in between a light jog and a walk,' in loosely fitting boots to catch up with her family." *Id.*

And even if Plaintiff had actually slipped on the identified piece of plastic, Defendants argue, there is no evidence as to where that piece of plastic came from. *Id.* Plaintiff described the piece of plastic as similar to saran wrap, which Defendants submit could just be discarded trash on the floor. *Id.* They point to testimony that customers in the store's bakery and produce sections have access to clear plastic bags and that many types of products throughout the store are wrapped in clear plastic or include clear plastic packaging tape. *Id.* at 11-12. Because there is no evidence, such as an expert opinion, that it is more likely than not that the subject piece of plastic came from a pallet wrapped in shrink wrap that an associate negligently cut on the floor and left, causing Plaintiff's fall, Defendants contend that it would be asking the jurors to speculate as to its negligence. *Id.* at 12-13. It is equally likely that the plastic was dropped by a customer, Defendants say, and there is no evidence that Walmart's stockers frequently drop plastic on the floor while stocking cereal or that any plastic dropped from overnight stocking would have been left on the sales floor for hours. *Id.* at 12-13, 21. Defendants contend that they have produced testimony that stocking in the cereal aisle is done overnight and that the sales floor is clear by 5 a.m., and additionally, Plaintiffs provide no evidence as to when the cereal aisle was last stocked. *Id.* at 21. Further, Walmart employees established that any plastic or shrink wrap is removed from bulk cereal boxes in a back room, not on the sales floor. *Id.* Finally, Defendants reiterate, Plaintiff has not produced evidence that the plastic was even from packaging as opposed to something dragged in by a customer. *Id.* at 21-22.

In opposition, Plaintiff contends that "there is a plethora of material facts here that the debris that caused Plaintiff, C.R., a minor, to slip and fall was a piece of packaging plastic from

Walmart stocking bulk merchandise on the sales floor in the cereal aisle." *See* ECF No. 27-2 ("Opp.") at 14. As for whether the cause of Plaintiff's fall was the subject piece of plastic, Plaintiff points to her own testimony and that of her parents. *Id.*

As to whether the piece of plastic was packaging plastic that Walmart employees left on the floor while stocking, Plaintiff points to, in most relevant part, (1) testimony from Plaintiff's father that he saw packages on the sales floor that appeared to be for stocking, *id.*; (2) testimony from Plaintiff's father that he saw Walmart employees actively working in some aisles on the shelves on the date of the accident, *id.*; (3) testimony from Walmart employee Jessica Hunt that cereal is delivered to Walmart on pallets wrapped in packaging plastic, which is sometimes cut on the sales floor, *id.* at 15; (4) testimony from Hunt that the area of the cereal aisle where Plaintiff fell had pallet jack skid marks on the sales floor, which Walmart tries to remove each night, *id.*; and (5) there are times where merchandise is on the sales floor wrapped in packaging plastic, *id.* at 16.

Plaintiff also attempts to show that the plastic that allegedly caused Plaintiff's fall is packaging plastic sourced by Walmart by looking to testimony from a Walmart employee that the picture from the scene of the accident shows a clear piece of plastic on the sales floor, and the packaging plastic wrapped around the bulk merchandise that comes to the store is also clear. *Id.* Another Walmart employee testified that the piece of plastic shown in the picture looked like a piece of packaging plastic that merchandise would come wrapped in at the store. *Id.*

There are certainly questions of fact as to (1) whether Plaintiff actually slipped on the piece of plastic identified by her and her parents after her fall, (2) whether the piece of plastic was indeed from packaging wrapped around bulk merchandise, and (3) whether the plastic was caused to be on the floor by Walmart employees. But it cannot be said that the question of employee negligence is a genuine issue based on the evidence before the Court.

Plaintiff provides some evidence—albeit scant—that the plastic on the floor was packaging plastic, namely, in the form of testimony from one employee that both the plastic on the floor and packaging plastic are clear, and from another employee that the plastic on the floor looked like packaging plastic. But even assuming a jury would find that the plastic on the floor was packaging from a pallet, there is no evidence to support that the plastic ended up on the floor due to the negligence of a Walmart employee. The matter is one of "pure speculation or conjecture," making summary judgment proper. *See Pace*, 337 F. Supp. 3d at 519 (internal citation omitted) (holding that whether the grapes on the floor that caused the plaintiff's fall were caused by a store employee seen on camera stocking produce 22 minutes before plaintiff's fall was entirely speculative).

Compare *Clark v. Glosser Bros. Dep't Stores*, 39 A.2d 733 (1944), where the Superior Court of Pennsylvania held that there was sufficient evidence before the jury in the court below to find that the store had a hand in creating the hazard that caused the plaintiff's fall. The plaintiff had slipped and fallen on tapes that were used to hold together towels and sheets displayed on a series of tables. "There was testimony on the part of the defendant that it was possible for the tapes that bound the white goods together to fall or be thrown to the floor. The maintenance man, whose duties included keeping the floor in safe condition, said if he saw anything lying in the aisles he would 'generally kick it right under the table.'" *Id.* at 734. Because there was evidence that the defendant knew that employees would "throw[] the tapes in the aisles or not take[] reasonable precaution to prevent their falling to the floor," the court held that the store had actual notice of its own negligence and was therefore "chargeable with their dereliction." *Id.*

Here, in contrast to *Clark*, Plaintiff has presented no evidence that store employees would throw or let fall to the floor packaging plastic or that the store did not sufficiently clean up fallen packaging after stocking the sales floor. Rather, this case is similar to *Dugan v. Home Depot USA, Inc.*, No. 07-cv-1526, 2008 WL 1869280 (E.D. Pa. Apr. 28, 2008). There, in granting summary

judgment in favor of the defendant store, the Court distinguished *Clark* because the "plaintiff provide[d] no evidence that defendant knew it was possible for plastic bands to fall or be thrown to the ground and no testimony suggesting that defendant's employees failed to dispose of the plastic bands when they were found on the ground." *Id.* at *4. Without some evidence that the packaging plastic was indeed on the floor as a result of Defendants' negligence, it cannot be said that there is a genuine issue of material fact so as to preclude summary judgment. The fact that there were sometimes pallets wrapped in plastic on the sales floor—either during overnight stocking or even during the day—is insufficient. Rather, some evidence that plastic from the packaging was negligently dropped to the floor and left there is required. Plaintiff has not provided that. Summary judgment is therefore granted in favor of Defendants.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted. An appropriate Order follows.